Raymond BOBB, Plaintiff,

v.

Cecil D. ANDRUS, Secretary of the Interior, et al., Defendants.

Civ. A. No. 75–0420.

United States District Court, District of Columbia.

March 31, 1977.

Philip C. Jones, Washington, D. C., for plaintiff.

James J. Brown, U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

PARKER, District Judge.

Mr. Raymond Bobb, an Indian employee of the Department of the Interior (Interior) alleges in his complaint that while serving with the Bureau of Indian Affairs (Bureau or BIA), he was the target of racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (1972). Specifically, he claims that during the three-year period he served as a management intern as well as during the subsequent reorganization and reduction-in-force (RIF) at the Bureau, he was unlawfully discriminated against because of his Indian background. In addition, he asserts that during the entire period he served at Interior he was denied the benefits of the Indian Preference Act, 25 U.S.C. § 472, *et seq.* A trial *de novo* on the complaint was concluded on February 28, 1977. The testimony of the several witnesses has been considered and their credibility determined. The submitted depositions, documentary evidence and exhibits have also been considered.

Plaintiff's counsel has presented evidence which he contends demonstrates a total lack of commitment on the part of the top staff and line officials of Interior and the Bureau to the Indian preference and equal employment opportunity laws. In addition, several recent studies [1] analyzing the management and personnel system at the Bureau have been relied upon to demonstrate the Bureau's lack of a well-defined policy, the insensitivity of its administrators and the mismanagement of its personnel functions. In addition, statistical evidence has been presented to support a claim of systemic and institutionalized discrimination at the Bureau, and testimony has been proffered as to internal factionalism and indifference on the part of its officials to the mission and purposes of the Bureau and the Indian Preference Act.

If this matter had been designated as a class action, such evidence would have been most relevant and convincing. No class claim is involved in this proceeding, however, and the Court has before it only the individual complaint of Mr. Bobb. Notwithstanding this, the Court has considered and reviewed the entire testimony and evidence presented within the purview of the plaintiff's Title VII complaint and concludes that entry of judgment in favor of the plaintiff is not warranted and that this proceeding should be dismissed. Pursuant to Rule 52, Federal Rules of Civil Procedure, the Court enters the following findings of fact and conclusions of law:

### I

### Plaintiff's Participation In The Management Intern Program

Plaintiff Raymond Bobb is an American Indian citizen of the United States. He holds a Bachelor of Arts degree from Sacramento State College, Sacramento, California, and at all times relevant to this pro-

---

1. These studies were the *Bureau of Indian Affairs Study* by the American Indian Policy Review Commission, dated September, 1976; the *Civil Service Commission Inspection Report on Personnel Management at the BIA Headquar-* ters Office, dated August 23, 1976; and the *Personnel Management Action Plan for the Bureau of Indian Affairs,* dated September 7, 1976.

ceeding was employed by the Bureau of Indian Affairs of the United States Department of the Interior. Defendants Cecil D. Andrus and Raymond V. Butler are respectively the Secretary of the Interior and the Acting Commissioner of the Bureau of Indian Affairs.

In October of 1971, plaintiff was hired by BIA as a management intern, GS-7/1, and selected, along with eleven other persons, for admission to its Indian Administrator Development Program (Program or IADP). IADP was a program developed by the Bureau which contemplated a three to five year course in which Indians with recognized potential received special training and were encouraged to assume greater responsibility in BIA operations. Under the Program, enrollees would, in close consultation with their supervisors, develop career objectives with the expectation that successful participants would achieve a GS-12 rating upon its completion. Enrollees were told and were aware that they were participants in an "up or out" program. Unsuccessful participants were to be removed without stigma and assigned to appropriate positions. Mr. Bobb participated in the Program until May 9, 1974, when he was dropped as a consequence of poor performance evaluations.

While enrolled, Bobb participated in a variety of work, training and orientation experiences in different sections of both the Bureau and Interior. Along with other participants, he received periodic written training evaluations from the supervisory personnel to whom he was assigned. These evaluations were not considered to be the regular ratings periodically given to civil service employees, and they were not placed in his personnel folder. They were designed solely to evaluate the participants' progress in the Program and toward that end, considered productiveness, academic course progress, attitude, growth, originality, ability to function without close supervision and other relevant factors. Plaintiff does not dispute that he received a total of six such evaluations during his internship.

Bobb's first evaluation covering the period from June, 1971 to December, 1972, was generally satisfactory although his supervisor commented unfavorably on his lack of confidence on new assignments. By the time of his next evaluation, plaintiff had been promoted to a GS-9/1 level and had begun to present serious problems. He was rated "inadequate" in five of the seven areas measured and "average" in two. In addition, the evaluation report stated that "[u]nless there is a drastic change for the better in Ray Bobb's performance, [the supervisor] . . . could not recommend his continuing in the program."[2] Soon thereafter, the author of that report wrote that plaintiff had "very little potential for managerial positions" and was an "employee [who] cannot be depended upon to produce accurate work."[3] It was at this point, in late May to early June of 1973, that plaintiff's supervisors and other managers began to document his performance errors.

On May 18, 1973, plaintiff met with certain training and personnel supervisors of the Bureau to discuss his "unsatisfactory" performance evaluations. On this occasion, Bobb indicated his desire to receive contract compliance officer training at Interior's Office for Equal Opportunity. The supervisors felt that a transfer at that time was inadvisable, however, and arranged for plaintiff to undertake staff personnel management training from June to August, 1973.[4] Despite this, Bobb's evaluation reports remained unfavorable. A supervisor's evaluation of August 16, 1973, for example, stated that plaintiff was "too diffident and has shown little initiative, . . . needs close direction, . . . [and] has not

**2.** Evaluation Form prepared by Supervisor Schipper, December, 1972–March, 1973, Administrative Record (A.R.) at 235.

**3.** Evaluation Form prepared by Supervisor Schipper, March & April 1973, A.R. at 232.

**4.** Memorandum from Chief, Staffing Activity, to Acting Chief Personnel Officer, May 31, 1972, A.R. at 212.

demonstrated [a] capacity to perform at the GS–11 level yet." [5]

The plaintiff had an earnest desire to get into contract compliance work and from August, 1973, through approximately mid-April, 1973, he received training at Interior's Office of Equal Opportunity. He understood that this training could not be utilized at the Bureau since BIA had no contract compliance officer positions. Plaintiff's initial evaluation as a trainee in this new assignment was favorable and stated that he had "completed all technical requirements" on given assignments. Indeed, he was recommended for promotions to a Grade GS–11 level.[6] This February 13, 1974, evaluation was questioned by Bobb's Training Coordinator at the Bureau, however, because it did not coincide with other information he had received concerning plaintiff's performance on his new assignment.[7] A second evaluation was then requested and submitted to the BIA by Interior's Office of Equal Opportunity on April 19, 1974. This evaluation reported an unsatisfactory rating for the plaintiff.[8] Both evaluations were prepared by Harold Snegawski, and at trial, by way of explanation, he stated that the latter report reflected new information brought to his attention subsequent to February, 1974. The Court rejects this explanation and finds it unworthy of belief. The Court also finds that the February, 1974, evaluation was overly charitable and did not accurately measure Bobb's performance.

■ Despite the contradictions presented by the 1974 evaluation, the preponderance of the credible testimony demonstrates that as a trainee in the IADP, plaintiff fell short of expected standards and was not considered by his supervisors as a good man-agement prospect. This Court finds that the evidence and testimony clearly support that judgment. This Court also finds that there is no credible evidence to support Bobb's contention that he was terminated from the Program because of his race, national origin or for any other unlawful reason.

## II

### The Realignment Of The Bureau And The Reduction-In-Force

In March, 1973, the President of the United States directed that steps be taken to transfer the day-to-day operational activities of the BIA from the District of Columbia to the respective field offices.[9] Pursuant to that directive, the Secretary of the Interior, by Order No. 2954, issued instructions for realignment of the Bureau's central office functions and responsibilities.[10] The realignment contemplated a drastic cutback in personnel from approximately 1307 to 715 positions. On May 20, 1974, the Secretary announced the new organization of the Bureau, stating that "Secretarial Order 2954 was designed to transfer day-to-day operational activities of the Bureau of Indian Affairs to the field, reduce nonessential Central Office support staff, and increase the effectiveness of the delivery system for service to Indians." [11] An organizational manpower listing of the realigned BIA was subsequently promulgated.

In early May of 1974, a meeting of the Career Development Committee of the IADP was held to consider the future of the Program and, in particular, the future of Raymond Bobb who had returned from his contract compliance training. That Committee, after considering all of the relevant

---

5. Letter from Michael Reed to Chief, Staffing Activity, Aug. 16, 1973, A.R. at 230.

6. Office of Economic Opportunity (OEO) Memorandum from Alonzo Davis to Robert Banks, Feb. 13, 1974, A.R. at 227–28.

7. Deposition of Robert E. Banks, filed Feb. 9, 1977, at 9–10.

8. OEO Memorandum from Hollis W. Johnson to Commissioner of Indian Affairs, April 19, 1974, A.R. at 225–26.

9. See Order No. 2954, Secretary of the Interior, May 11, 1973, A.R. at 244.

10. Id. at 244–48.

11. BIA reorganization manual of May 20, 1974, A.R. at 254.

factors, decided to terminate plaintiff from the Program. This decision was communicated to Bobb by a letter dated May 9, 1974, which stated, "The . . . Committee has reviewed all prepared evaluations relative to your participation in the Indian Administrator Development Program and has concluded . . . that your participation . . . should be concluded as of this date." [12] Plaintiff was also told that placement and work assignments would be arranged for him by the Chief of Personnel Management. Subsequently, he was advised by the Chief Officer that despite the approaching RIF the Bureau would find him an appropriate position. In the interim, he was detailed to the Personnel Staffing Office to perform work similar to that he had undertaken in the IADP.

Shortly thereafter, on June 4, 1974, training officer Robert E. Banks, as a favor to plaintiff, gave Bobb a satisfactory evaluation on a Department of Health, Education and Welfare form with the understanding that plaintiff would use this evaluation as a recommendation in searching for employment outside the BIA.[13] This was *not* an official evaluation. On June 10, 1974, Bobb received notice of the general RIF. He continued his employment as a GS–9/3 Administrative Trainee in the BIA Personnel Office, however, until subsequent reassignment under the RIF procedures. On August 15, 1974, he was advised that retention registers had been established and that he could not be assigned to a position at his present grade. He was assigned, therefore, to the position of Contract Specialist, GS–7/10, at the same annual salary level he was receiving as a GS–9/3.

As a Contract Specialist, plaintiff was assigned to the Branch of Property and Office Services along with several other employees who were assigned to that section as a consequence of the RIF. It had been anticipated by the BIA that the Branch would assume additional responsibilities relating to contracts and procurement and that it would require additional trained personnel. That expectation never materialized, however, and plaintiff was assigned completely unrelated tasks and afforded no opportunity to exercise skills associated with his job description.

On August 30, 1974, plaintiff filed a complaint with the Civil Service Commission (CSC) alleging discrimination in the RIF proceedings. Thereafter, because of a lack of contract work at Property and Office Services, plaintiff was detailed to the Branch of Paperwork Services. There, he did filing, filing research and various tasks not provided for in his job description. Subsequently, plaintiff withdrew his complaint with the CSC, and on October 12, 1974, filed a Title VII complaint charging discrimination, harassment and adverse working conditions arising out of the RIF and his reclassification as a GS–7/10. This complaint, which was processed in the Bureau's Office of Equal Opportunity (OEO), was rejected as not complying with 5 C.F.R., Part 713. No investigation was made at this time because the OEO Officer believed, in good faith, that the complaint was not within the purview of Part 713. This rejection was appealed to Interior on January 12, 1973, and rejected there for the same reason.

Thereafter, plaintiff sought relief through this proceeding, and this Court remanded the matter to Interior for a hearing and processing consistent with 5 C.F.R., Part 713. The investigative file was completed, and Interior filed a formal written decision denying plaintiff's claim in December of 1976.

■ After consideration of all credible testimony and evidence, this Court finds that plaintiff was reassigned and reduced in grade as part of a substantial Bureau-wide reorganization plan that was necessitated by business reasons and, further, that the RIF affected *all* BIA employees and did not *single out* plaintiff. In reassigning Bobb,

---

**12.** Memorandum from Chairman, Career Development Committee, to Raymond Bobb, May 9, 1974, A.R. at 242.

**13.** Deposition of Robert E. Banks, filed Feb. 9, 1977, at 13–14.

full consideration was given to his Indian preference status in accordance with Interior regulations and the Federal Personnel Manual, and he was assigned to the highest group in the retention registers for position openings for which he was qualified by training and experience. Plaintiff has not demonstrated that any discrimination by reason of race, national origin or any other unlawful consideration was practiced upon him in the reassignment process. Eight persons were reduced in grade as a result of the RIF at the BIA Central Headquarters, and six (6) were non-Indian while only two (2) were Indian.[14] Plaintiff's claim of retaliation after the filing of a discrimination complaint is unsupported. The evidence shows that because of an unanticipated and temporary situation, the management at the BIA used numerous individuals on detail assignments, and many of these persons served beyond the normal 120 days provided by Civil Service regulations.

Bobb was processed and placed on the retention registers during the RIF and was accorded Indian preference in accordance with the procedures prescribed in the Federal Personnel Manual. He was not qualified for any other position listed in the BIA Organization Manpower Listing and, thus, was not placed in other competitive levels. In addition, he was not qualified by virtue of either experience or training for the two positions which were available at the time, namely, Contract Specialist, GS–11, and Legislative Specialist, GS–11.

Mr. Bobb undoubtedly has a firm belief that it is as a consequence of racial prejudice against Indians that his experience at the Bureau and Interior was unrewarding, unsuccessful and personally disappointing. Such subjective feelings, however, will not support a finding of discrimination in the absence of direct or circumstantial evidence. Although he has demonstrated that he is an Indian, that he did not succeed in the IADP and that he was offered an assignment following the RIF at a lower grade level, defendants have shown by convincing and competent evidence that the personnel actions taken against him were not racially motivated or in reprisal for any complaint he has made of racial discrimination. The mandates of the Indian Preference Act were observed with respect to his employment at the Bureau, including his treatment during the RIF. Defendants' actions as they related to Mr. Bobb were taken for good and sufficient reasons and not as a subterfuge for racial discrimination.

On the basis of the foregoing, it is

ORDERED that judgment is entered for the defendants and plaintiff's complaint shall stand dismissed, and it is further

ORDERED that each party shall bear his own costs.

14. Senate Hearing on the Reorganization, Reduction in Force & Indian Preferences Within the Bureau of Indian Affairs before the Subcommittee on Interior and Insular Affairs, 93rd Cong., 2nd Sess., 234, 244 (1974).