UNITED STATES of America, Plaintiff,

v.

CITY OF MILWAUKEE, a Municipal Corporation, Harold A. Breier, Chief of Police, City of Milwaukee Police Department, William Stamm, Chief, City of Milwaukee Fire Department, Marjorie L. Marshall, Charles W. Mentkowski, Richard Block, John Giacomo and William I. Gore, Commissioners, City of Milwaukee Fire and Police Commission, Defendants.

Loren J. WASHINGTON, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Richard BLOCK, John Giacomo, William I. Gore, Marjorie Marshall and Charles W. Mentkowski, Individually and in their official capacities as members of the Board of Fire and Police Commissioners of the City of Milwaukee, and their Agents, Employees, Successors in Office, Assistants, and all others acting in concert or cooperation with them or at their direction or under their control, Defendants.

NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, Milwaukee Branch, Rafael Cruz, Gregory Davis, Stanley Davis, Larry G. Greenhill, Hubert Harris, Albert C. Manns, Sherman Moore, Jr., David Ybaney, Edward G. Wells, Willie E. Williams, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

Richard BLOCK, John Giacomo, William I. Gore, Marjorie Marshall and Charles W. Mentkowski, Individually and in their official capacities as members of the Board of Fire and Police Commissioners of the City of Milwaukee, and their Agents, Employees, Successors in Office, Assistants, and all others acting in

concert or cooperation with them or at their direction or under their control, Defendants.

Civ. A. Nos. 74-C-480, 74-C-318, 74-C-368.

United States District Court, E. D. Wisconsin.

Dec. 20, 1977.

William J. Mulligan, U. S. Atty., Milwaukee, Wis., Teresa M. Holland, Dept. of Justice, Civ. Rights Div., Employment Section, Washington, D. C., for plaintiff U. S.

Jeffery R. Myer, Richard M. Klein, Larry Farris, Legal Action of Wisconsin, Inc., Milwaukee, Wis., Patrick O. Patterson, New York City, for plaintiff Loren Washington, individually and on behalf of all other persons similarly situated.

Richard D. Hicks and Daniel L. Shneidman, Milwaukee, Wis., for plaintiffs N. A. A. C. P., Milwaukee Branch, Rafael Cruz, Gregory Davis, Stanley Davis, Larry G. Greenhill, Hubert Harris, Albert C. Manns, Sherman Moore, Jr., David Ybaney, Edward G. Wells, Willie E. Williams, individually and on behalf of all other persons similarly situated.

James B. Brennan, City Atty., by Maurice L. Markey, Asst. City Atty., Milwaukee, Wis., for all defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

In the complaint in *United States of America v. City of Milwaukee*, No. 74–C–480, the plaintiff alleged that the defendants were engaged in a pattern or practice of discrimination based on race and sex with respect to employment opportunities within the Milwaukee Fire and Police Departments, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Equal Employment Opportunity Act of 1972, the provi-

sions of the State and Local Fiscal Assistance Act of 1972 (Pub.L. 92–512, 86 Stat. 919), 31 U.S.C. § 1221 et seq., the Omnibus Crime Control and Safe Streets Act of 1968, Public Law 90–351, as amended, the Fourteenth Amendment to the Constitution of the United States, and 42 U.S.C. §§ 1981 and 1983.

In the complaint in *Washington v. Block*, No. 74–C–318, the plaintiff alleged that the defendants Block, Giacomo, Gore, Marshall and Mentkowski, members of the Milwaukee Fire and Police Commission, were engaged in a pattern or practice of discrimination based on race and national origin with respect to employment opportunities within the Milwaukee Fire Department, in violation of 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment to the United States Constitution.

In the complaint in *N. A. A. C. P. v. Block*, No. 74–C–368, plaintiffs alleged that the defendants Block, Giacomo, Gore, Marshall and Mentkowski, members of the Milwaukee Fire and Police Commission, were engaged in a pattern or practice of discrimination based on race and national origin with respect to employment opportunities within the Milwaukee Fire Department, in violation of 42 U.S.C. §§ 1981 and 1983 and the Fourteenth Amendment to the United States Constitution.

On October 17, 1974, the Court entered a consent decree in these three actions. Entry of the decree was based on the Court's finding that the parties to the order had waived hearing and findings of fact and conclusions of law (in Civil Action Nos. 74–C–318, 74–C–368, and 74–C–480 with respect to issues involving the Milwaukee Fire Department) on all issues and had agreed to entry of the order. The Court stated in the order that while consent of the parties did not constitute findings on the merits of the cases, nor was it an admission by defendants of any violation of Title VII, the State and Local Fiscal Assistance Act of 1972, or rights guaranteed by the Fourteenth Amendment or 42 U.S.C. §§ 1981 and 1983, it did serve to resolve all issues in

Civil Action Nos. 74–C–318, 74–C–368, and 74–C–480 with respect to the Milwaukee Fire Department. The order was signed by all parties to these actions. The Court retained jurisdiction of the actions for such supplemental or corrective relief as might be necessary or appropriate.

Defendants thereafter on September 21, 1976, brought motions to vacate the consent decree under Rule 60(b)(4) of the Federal Rules of Civil Procedure and to dismiss the actions under Rule 12(b). The essence of their claim is that Congress overstepped its authority in enacting the statutes which form the jurisdictional bases for this action, because the Fourteenth Amendment to the United States Constitution guarantees freedom from invidious discrimination only, requiring proof of intent, whereas the coverage of the statutes in issue and the allegations in the complaints encompass other types of discriminatory activity. The defendants' motions will be denied.

 Rule 60(b)(4) provides that a court may relieve a party of a final judgment if "(4) the judgment is void." A judgment is not void, however, even if the statute pursuant to which it is entered is unconstitutional, which the Court does not find to be the case here. As stated in 7 Moore's *Federal Practice* ¶ 60.25[2] at 301–304 (2d ed. 1975):

> "Many cases state two requisites for a valid judgment, that the court: have jurisdiction over the subject matter; and jurisdiction over the parties * * *. * * * Where, for example, the court has jurisdiction over the class of cases involved, its judgment is not void, and hence is not subject to collateral attack, on the ground: . . . that the statute under which the court proceeded is unconstitutional * * *."

See also *Chicot County Drainage District v. Baxter State Bank,* 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940). Thus, the defendants' claim that the consent decree is void because the statutes which form the bases for the actions in which it was entered are

unconstitutional is without merit. The cases which defendants cite are not on point, and there are no cases which have held Title VII, 42 U.S.C. §§ 1981 and 1983, the State and Local Fiscal Assistance Act, or the Omnibus Crime Control and Safe Streets Act, 42 U.S.C. § 3766(c), to be unconstitutional. On the contrary, federal courts have jurisdiction over cases brought pursuant to Title VII and 42 U.S.C. §§ 1981 and 1983. See *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *General Electric Company v. Gilbert,*429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *McDonald v. Santa Fe Trail Transportation Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976); *Runyon v. McCrary,* 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Congress has the authority to set the terms and conditions upon which its grants to the states shall be disbursed. *King v. Smith,* 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1967); *United States v. San Francisco,* 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050 (1940). Both the Omnibus Crime Control and Safe Streets Act and the State and Local Fiscal Assistance Act contain requirements of nondiscrimination for grant recipients. Section 1343, 28 U.S.C., provides that the district courts shall have jurisdiction of any civil actions brought to secure equitable or other relief under any act of Congress providing for the protection of civil rights.

 There is another basis, however, on which the Court might more properly vacate its consent decree and in reference to which the cases cited by defendants are more apposite. That is, Rule 60(b)(6) of the Federal Rules of Civil Procedure provides that a court may relieve a party from a final judgment for "(6) any other reason justifying relief from the operation of the judgment." A change in the controlling law subsequent to a court's entry of a final order generally will not justify granting relief from the judgment. *Lubben v. Selective Service System Local Bd. No. 27,* 453 F.2d 645 (1st Cir. 1972); *Class v. Norton,* 376 F.Supp. 503 (D.C.Conn.1974), aff'd in part, rev'd in part on other grounds, 507 F.2d 1058 (2d Cir. 1974). Furthermore, Rule 60(b)(6) applies only upon a showing of exceptional circumstances. *United States v. Cirami,* 535 F.2d 736 (2d Cir. 1976); *Silvers v. TTC Industries, Inc.,* 395 F.Supp. 1318 (D.C.Tenn.1974), aff'd 513 F.2d 632 (6th Cir. 1975).

 On the other hand, "a sound judicial discretion may call for the modification of the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen," and "the court cannot be required to disregard significant changes in law or facts if it is 'satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong.'" *System Federation No. 91, Railway Employes' Department, AFL–CIO v. Wright,* 364 U.S. 642, 647, 81 S.Ct. 368, 371, 5 L.Ed.2d 349 (1961), quoting *United States v. Swift & Co.,* 286 U.S. 106, 114–115, 52 S.Ct. 460, 76 L.Ed. 999 (1932). Also in *Swift* at 119, 52 S.Ct. at 464 it was held that a court should exercise its power to modify a consent decree only on a "clear showing of grievous wrong evoked by new and unforeseen conditions." This Court has considered carefully whether the law, which was in effect at the time the consent decree was entered in this action, has changed so drastically in the interim as to constitute "new and unforeseen conditions" and to entitle the defendants as a matter of equity to vacation of the consent decree and finds that the law has not so changed.

 The decree was entered on October 17, 1974. At that time the standards for a finding of discriminatory conduct in violation of Title VII were governed by *Griggs v. Duke Power Company,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), which held that a showing of racially discriminatory effect, even without a showing of discriminatory intent, was sufficient to make out a case of violation of Title VII. Defendants cite *Fitzpatrick v. Bitzer,* supra; *General Electric Company v. Gilbert,* supra; *National League of Cities v. Usery,* 426 U.S. 833,

96 S.Ct. 2465, 49 L.Ed.2d 245 (1976); and *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), in support of their claim that a showing of discriminatory intent is now required under Title VII as well as under the Fourteenth Amendment. Those cases do not stand for the proposition in support of which defendants cite them.

*Washington v. Davis,* supra, concerns the standards for adjudicating claims of discrimination brought pursuant to the Fifth and Fourteenth Amendments of the United States Constitution rather than to Title VII. The Court recognized therein that:

"As the Court of Appeals understood Title VII, employees or applicants proceeding under it need not concern themselves with the employer's possibly discriminatory purpose but instead may focus solely on the racially differential impact of the challenged hiring or promotion practices. This is not the constitutional rule. We have never held that the constitutional standard for adjudicating claims of invidious racial discrimination is identical to the standards applicable under Title VII, and we decline to do so today." 426 U.S., at 238–239, 96 S.Ct. at 2047.

The Court further stated at 246–248, 96 S.Ct. at 2051:

"Under Title VII, Congress provided that when hiring and promotion practices disqualifying substantially disproportionate numbers of blacks are challenged, discriminatory purpose need not be proved * * *. * * *

\* \* \* \* \* \*

" * * * [I]n our view, extension of the rule beyond those areas where it is already applicable by reason of statute, such as in the field of public employment, should await legislative prescription."

Thus, the Court recognized specifically in *Washington* that Title VII does not require proof of discriminatory intent. *National League of Cities v. Usery,* supra, and *Fitzpatrick v. Bitzer,* supra, dealt with the Eleventh Amendment and the authority of Congress to authorize private suits against the states and did not deal with the issue of the statutory and/or constitutional standards governing proof of discrimination.

Finally, *General Electric Company v. Gilbert,* supra, concerns the issue of whether an employees' disability plan which excluded from coverage disabilities arising from pregnancy constituted sex discrimination in violation of Title VII. The Court held that it did not, relying in part on *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), wherein it held that a similar plan was not in violation of the equal protection clause of the Fourteenth Amendment. Mr. Justice Rehnquist, speaking for the majority, stated:

"While there is no necessary inference that Congress, in choosing [the language of 42 U.S.C. § 2000e–2(a)(1)], intended to incorporate into Title VII the concepts of discrimination which have evolved from court decisions construing the Equal Protection Clause of the Fourteenth Amendment, the similarities between the congressional language and some of those decisions surely indicate that the latter are a useful starting point in interpreting the former. Particularly in the case of defining the term 'discrimination,' which Congress has nowhere in Title VII defined, those cases afford an existing body of law analyzing and discussing that term in a legal context not wholly dissimilar to the concerns which Congress manifested in enacting Title VII * * *." 429 U.S., at 133, 97 S.Ct., at 407.

Despite this language, however, the holding of the case does not suggest that once "discrimination" is identified the standards of unlawful discrimination under Title VII and the Fourteenth Amendment are identical. Rather, it holds only that since the exclusion of pregnancy from a disability-benefits plan does not constitute sex discrimination at all, it cannot violate either the Fourteenth Amendment or Title VII. In fact, the Court noted specifically at 136–137, 97 S.Ct. at 408 that:

" * * * our cases recognize that a prima facie violation of Title VII can be established in some circumstances upon proof that the *effect* of an otherwise fa-

cially neutral plan or classification is to discriminate against members of one class or another. * * *",

citing *Washington v. Davis,* supra, and *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). See also the concurring opinions in *General Electric Company v. Gilbert* wherein Justices Stewart and Blackmun indicate their understanding that the case does not overrule *Griggs v. Duke Power Co.,* supra, nor hold that effect may not be the controlling factor in a Title VII case.

The recent Supreme Court cases discussed above do not change the prevailing standard of discrimination under Title VII which was in effect at the time that the consent decree in this action was entered. The recent decision on remand of the United States Court of Appeals for the Seventh Circuit pointed this out. See *Metropolitan Housing Development Corp. v. Village of Arlington Heights,* 558 F.2d 1283 (7th Cir. 1977), wherein, in determining the legality of certain conduct under the Fair Housing Act, 42 U.S.C. §§ 3601 et seq., the Court stated at 1288–1289:

"The major obstacle to concluding that action taken without discriminatory intent can violate section 3604(a) is the phrase 'because of race' contained in the statutory provision. The narrow view of the phrase is that a party cannot commit an act 'because of race' unless he intends to discriminate between races. By hypothesis, this approach would excuse the Village from liability because it acted without discriminatory intent [the Supreme Court having found that the conduct of the Village was not in violation of the Fourteenth Amendment]. The broad view is that a party commits an act 'because of race' whenever the natural and foreseeable consequence of that act is to discriminate between races, regardless of his intent. Under this statistical, effect-oriented view of causality, the Village could be liable since the natural and foreseeable consequence of its failure to rezone was to adversely affect black people seeking low-cost housing and to perpetuate segregation in Arlington Heights.

"The Supreme Court adopted the narrow view for equal protection purposes in *Washington v. Davis,* and defendant argues that that decision should bind us in this case as well. However, *Washington* undercuts more than it supports defendant's position. In that case, the Court created a dichotomy between the Equal Protection Clause and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Although the Court announced its new intent requirement for equal protection cases, it reaffirmed the viability of *Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), in which it had previously held that an employment practice that produced a racially discriminatory effect was invalid under Title VII unless it was shown to be job-related. 426 U.S. at 238–39, 246–48, 96 S.Ct. 2040. Thus, a prima facie case of employment discrimination can still be established under Title VII by statistical evidence of discriminatory impact, without a showing of discriminatory intent. *United States v. City of Chicago,* 549 F.2d 415, 435 (7th Cir. 1977)."

IT IS THEREFORE ORDERED that the motions of the defendants to vacate the consent decree entered in these actions on October 17, 1974, and to dismiss the complaints be and they hereby are denied.