Alonzo STEVENS, Appellant,

v.

DOBS, INC., et al., Appellees.

No. 73–1164.

United States Court of Appeals,
Fourth Circuit.

Argued June 4, 1973.

Decided Aug. 2, 1973.

Sylvia Drew, New York City (Jack Greenberg, New York City, Julius Le-Vonne Chambers, Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., and Michael Davidson, New York City, on brief), for appellant.

W. C. Harris, Jr., Raleigh, N. C. (Harris, Poe, Cheshire & Leager, Raleigh, N. C., on brief), for appellees.

Before BRYAN, Senior Circuit Judge, RUSSELL, Circuit Judge, and KNAPP, District Judge.

PER CURIAM:

Plaintiff sought relief on account of alleged racial discrimination in the refusal to rent him an apartment in an apartment complex owned by the defendant. Jurisdiction was based on Sections 3610 and 3612, 42 U.S.C., Sections 1981

and 1982, 42 U.S.C., and Section 1343 (3) and (4), 28 U.S.C. The District Court denied relief, finding that "the evidence does not establish any racial motive" in the refusal to rent. We reverse the dismissal and remand for further proceedings not inconsistent herewith.

It is well settled that the findings of the District Court are not to be disturbed unless "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Gypsum Co. (1948), 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. We are, however, firmly convinced that in this case such "mistake has been committed." The record, it seems clear to us, establishes a denial based on racial grounds.

The plaintiff is black. He personally applied to the receptionists at the defendant's apartment complex on two occasions to rent an apartment in its Beckanna Apartments: At the time there were no black tenants in the Beckanna Apartments, nor had there ever been. On the occasions of his application for an apartment the plaintiff gave the suggested information as to financial resources and furnished character references in the manner generally required by the defendant. Neither the manager nor the defendant Coggins, the president and actual owner of the defendant Dobs, Inc., ever saw the plaintiff. Of the two separate receptionists [1] who did interview the plaintiff and accept his application only one testified. In any event, when the plaintiff sought to rent an apartment on February 20 or 21, 1969 no one indicated he was an unacceptable tenant and the defendant thereafter proceeded to conduct a character, credit and income check of the plaintiff. All of these checks were admittedly favorable. It was not until "sometime in March", after these checks had been made, that the defendant's manager determined the plaintiff was an unacceptable tenant. The plaintiff's unacceptability, according to the apartment manager, did not rest on any adverse report of his character, or a want of an adequate income on his part, or any reflection on his credit responsibility. The defendant contends simply that the plaintiff was found unacceptable because, when he came to the apartments on the two occasions he visited them and was interviewed by the receptionists, both receptionists reported to the manager that they had detected "an offensive odor." The receptionist who testified was unable to identify the exact nature of the odor, describing it merely as "maybe unclean clothing or just a stale odor." She conceded, however, that when she had seen the plaintiff, the latter was accompanied by a male companion and she admitted she could not say whether the odor emanated from the plaintiff or from his companion, who, incidentally, was white.

The very reason assigned for denying the plaintiff an apartment carried on its face manifest racial overtones,[2] which, considering the flimsiness of the evidence of "offensive odor", at the least demanded the most careful scrutiny of the circumstances under which the plaintiff was denied an apartment. If the plaintiff was disqualified as a tenant by reason of any really offensive odor detected on his first interview, it would seem reasonable that the receptionist, either aft-

1. Though described as receptionists, these employees were more in the nature of office managers. They received and passed on applications to rent; they made the character, credit and reference checks on applicants; and they had other duties.

2. For a discussion of the prejudice associated with this notion of a peculiar "Negro odor," see Allport, The Nature of Prejudice at 134-5 (Anchor Ed., 1958) and Myrdal, An American Dilemma, at 50 (Rose's Cond. vers., Harper Torchbrooks), where, in referring to the belief, among others, that "all Negroes [have] a peculiar odor," the author adds, "[S]uch beliefs are frequently used to justify discrimination and segregation."

er consulting the manager or without so consulting him, would have advised the plaintiff immediately of his unacceptability. After all, it was the burden of the defendant's testimony that the responsibility for passing on the acceptability of tenants rested with the receptionists and the manager who acted on their own without advice from the owner. But neither the receptionists nor the manager acted promptly on plaintiff's application by refusing it. On the contrary, they conducted an income and character check of the plaintiff. It was only weeks later, after the various investigations of the plaintiff's character and income had been completed, that the manager, hesitant about making a decision on his own, requested advice from the owner as to how to deal with plaintiff's application. Why did he feel so hesitant? He conceded all the investigations of the plaintiff were favorable. The conclusion seems irresistible that it was the plaintiff's color that prompted the manager to look to the owner for guidance. The owner in turn testified he instructed the manager to treat the application as any other application. But, what was there so unusual or abnormal about the plaintiff's application as to prompt such an instruction? The conclusion again seems clear that the unusual fact about the plaintiff's application was the applicant's color and that this was an important element in the denial of an apartment to him.[3] The claim of "offensive odor", freighted as it was with all the trademarks of racial prejudice, was, it would appear, simply an excuse for action that could find no real basis except in racial discrimination. In fact, the receptionist who testified frankly admitted she knew of no reason why the plaintiff was denied an apartment. This candid admission adds further confirmation to the conclusion that the denial of an apartment to the plaintiff was discriminatorily motivated.

We are accordingly constrained on this record to conclude that the District Court erred in dismissing the plaintiff's action and it is remanded for further proceedings not inconsistent herewith.

---

3. *See*, Smith v. Sol D. Adler Realty Company (7th Cir. 1971), 436 F.2d 344, 349–350.