**Green MILLER, Jr., Appellant,**

v.

**Lester PORETSKY et al., Appellees.**

**No. 77–1115.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 13, 1978.

Decided Dec. 28, 1978.

---

Daniel B. Silver, Washington, D. C., with whom Thomas C. Hill, Washington, D. C., was on brief, for appellant.

Charles R. Donnenfeld, Washington, D. C., with whom Paul A. Kaplan, Washington, D. C., was on brief, for appellees.

Before ROBINSON, MacKINNON and ROBB, Circuit Judges.

Opinion for the court filed by MacKINNON, Circuit Judge.

Concurring opinion filed by SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

MacKINNON, Circuit Judge:

This case presents an appeal from a jury verdict finding that appellant had not been the victim of racial discrimination during the course of his tenancy, and subsequent eviction, from the luxury Crestwood Apartments located in Washington, D. C. Appellant, Green Miller, filed suit seeking compensatory, punitive and injunctive relief under the (1) Thirteenth Amendment, (2) section one of the Civil Rights Act of 1866, now codified as 42 U.S.C. § 1982 (1970), (3) section 16 of the Civil Rights Act of 1870,

now codified as 42 U.S.C. § 1981 (1970), and (4) the Fair Housing Act of 1968, 42 U.S.C. § 3601 et seq. (1970). At trial, the appellant introduced evidence of a number of incidents allegedly indicative of racial discrimination, and the appellee landlord countered this evidence—most of which involved various altercations with Crestwood personnel and fellow tenants—with testimony explaining these incidents as caused more by Miller's own obstreperous behavior than by any racial bias on the part of the appellees.

In this appeal, we are not concerned with the details of the factual issues which the jury at trial clearly determined were more accurately portrayed by the landlord than by appellant. We are confronted solely with three grounds on which appellant claims the verdict below should be overturned and a new trial ordered: (1) an allegedly erroneous evidentiary ruling, (2) a denial of collateral estoppel, and (3) a refusal of a requested instruction. We find that the lower court did commit error in its evidentiary ruling, but that such error was harmless, and that its denial of collateral estoppel and its refusal of appellant's proposed instruction were not erroneous. Accordingly, we affirm the judgment below in all respects.

I

THE EVIDENTIARY RULING

At the trial, appellant wished to introduce evidence of alleged incidents of discrimination involving other Crestwood tenants similar to those which he himself claimed to have suffered. The District Court refused to admit this evidence (only one incident was actually proffered, that of a one Horan, although appellant alludes to the existence of several others). The trial court did not specify its reasons for exclusion of Horan's testimony, but appellees argue here that the court's ruling was adequately supported by Federal Rule of Evidence 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Appellees insist that evidence of incidents of discrimination concerning parties other than Mr. Miller were properly excluded by the trial court in the exercise of its discretion, because not only would demonstrating that actual discrimination had taken place in such incidents have required extensive investigation of collateral issues, but also because evidence of such incidents—although probative of the motive of the landlord in dealings with the appellant [1]—would have been excessively prejudicial to the appellee.[2]

▉ It is unquestionably the case, in this circuit and elsewhere, that the trial judge's weighing of evidence against the criteria of Rule 403 is a matter within his discretion and will only be overturned on appeal for abuse, *e. g., United States v. Wright,* 160 U.S.App.D.C. 57, 62, 489 F.2d 1181, 1186 (1973); *Kilarjian v. Horvath,* 379 F.2d 547, 548 (2d Cir. 1967); *Hardy v. United States,* 118 U.S.App.D.C. 253, 254, 335 F.2d 288, 289 (1964). We are naturally reluctant to disturb a trial judge's ruling on an evidentiary matter such as this, and we recognize that problems of prejudice and time-consuming examination of collateral issues are present, nevertheless we conclude for several reasons that it was error to exclude this testimony.

First, the court did admit testimony of black witnesses for the appellees asserting that they had *not* suffered racial discrimination at Crestwood. Such testimony was the counterpart of that which the appellant wished to introduce through Horan, and elementary fairness would require that if the appellee could bring in such evidence, the appellant should have been allowed to do so also. The trial court in making its ruling on this matter alluded to the fact that appellees had only put on witnesses serving to rebut Mr. Miller's own statement in open court,[3] but this rationale proves little. Clearly the testimony of third persons would be more persuasive in the jury's eyes than that of the appellant himself, and he should have been entitled—if he were able—to rebut the landlord's defense of a non-discrimination motive by the same apparently disinterested evidence that appellees were allowed to use to rebut appellant's claim of racial animus.

It is hard to see how appellant's evidence of possible discrimination against Horan and possibly others would tend to embroil the court in investigation of collateral issues any more than would appellees' evidence of non-discrimination. It is likely, however, that the former would involve a substantially higher risk of prejudice. This danger, however, seems outweighed by the fact that at the pretrial conference, the district judge gave appellant good reason to believe that he would be entitled to admit testimony concerning alleged acts of discrimination against others. At this conference, the following exchange took place concerning the status of such evidence:

> MR. DONNENFELD. Your Honor, I would suggest that, if I know the evidence here, if they call another tenant not affiliated with Mr. Miller who says

---

1. Appellees make a brief argument that testimony of discrimination against others would not be admissible under the provisions of rule 404 of the federal rules of evidence, providing that "It [evidence of other crimes, wrongs, or acts] may, however, be admissible for other purposes, such as proof of motive, opportunity, intent . . ." Appellees assert that the real purpose of the excluded testimony was to show that as appellees had acted with racial animus in the past, they were likely to have acted in conformity with this trait in the instant case. The evidence would, of source, be inadmissible to prove action in conformity with the charac-

teristic of racial bias, Rule 404(a), but this was not the purpose for which appellant sought to introduce the excluded testimony. Rather, he sought to do so in order to demonstrate the motive with which appellees performed the acts, proved through other evidence, of which appellant complains.

2. Appellees suggest that the jury might have convicted them not for discriminating against Mr. Miller, but for their past acts of prejudice, Brief for Appellees at 18.

3. Tr. 443, *see* Brief for Appellees at 20.

that they also had some problem; they were once chewed out by the landlord, and they view that as a racial matter, I can't see how that is in any way probative of the landlord's actions toward Mr. Miller vis-a-vis Mr. Miller.

MR. HEARITY. It is certainly relative as to motive, Your Honor.

MR. DONNENFELD. What does what the defendants did to tenant "X" have to do with their motives vis-a-vis Mr. Miller?

MR. GARLAND. If the landlord did to tenant "X" a certain act because of his race and his race is, in fact, the same race as Mr. Miller's then you can also say that his motive for acting toward Mr. Miller was due to Mr. Miller's race.

MR. DONNENFELD. What about the 200 tenants who are black and did not have the same experience?

MR. GARLAND. No. 1, there were not 200 other blacks who were tenants. At this time we are talking about 19 other tenants who are black. They can testify to the fact that they were not discriminated against because of their race.

MR. HEARITY. This, we believe, apart from any pattern and practice theory, is relevant evidence to make the fact that Mr. Miller was discriminated against on the basis of his race more likely to be true.

We think it is relevant. The witnesses will be short.

THE COURT. All right.

I will let you, over the objection of Mr. Donnenfeld, so the record is clear, present evidence with respect to pattern and practice, but that has to be limited, in fairness to the defendants, certainly to no more than the Crestwood Apartments. Do you not agree?

MR. HEARITY. Yes, Your Honor.

MR. DONNENFELD. Your Honor, may we ask that it be limited to the types of alleged discriminatory acts that were visited on Mr. Miller?

THE COURT. I think that is a fair caveat, and I don't think the plaintiffs will object to that, either.

MR. HEARITY. We will not, Your Honor, depending on the definition of "discriminatory acts visited upon Mr. Miller." If you are talking about unfounded complaints of this, that or the other thing—

THE COURT. I think we can settle that, as my law clerk just mentioned, when the problem comes up at trial. J.A. 45–46.

■ It appears from this transcript that the district judge had agreed, or at least misspoke in such a way as to lead appellant justifiably to believe that he had agreed, to admit into evidence instances of other tenants' experience of the "types of alleged discriminatory acts that were visited on Mr. Miller." The excluded testimony involved a claim that the landlord had refused to rent to a black (Horan), one of the grievances appellant himself had asserted against appellees.[4] Thus, it appears that appellant had legitimate grounds to expect that such testimony would be allowed. A judge is not absolutely bound by representations at the pretrial conference, but representations made at that time should only be reneged upon with great reluctance, usually only to prevent manifest injustice, e. g., *Manbeck v. Ostrowski*, 128 U.S.App.D.C. 1, 384 F.2d 970 (1967), *cert. denied*, 390 U.S. 966, 88 S.Ct. 1077, 19 L.Ed.2d 1170 (1968). We find no such justification in this case, and feel that the possible damage the trial court's unexpected exclusion did to appellant's case outweighed any reasonable fear of prejudice to the appellees from introducing such evidence.

■ In summary, it is clear that the proffered evidence of past acts of racial discrimination was relevant to prove the landlord's motive in his action towards appellant, the risk of time-consuming collateral inquiries

4. Although most of Mr. Miller's grievance arose from alleged harassment after he moved into Crestwood, he also complained of the diffi- culty he had initially in securing an apartment in the building, *see* Brief for Appellant at 6, Reply Brief at 2–4.

was no more present in admitting appellant's evidence of such past incidents than in admitting appellees' similar testimony; and the danger of prejudice to the appellees was over-balanced by the detrimental effect of the exclusion on appellant's presentation. On the whole, the admission of appellees' witnesses testifying to their freedom from discrimination and the exclusion of appellant's witness testifying to the contrary was, particularly in light of the colloquy at the pretrial conference, that sort of decision which traditionally has been considered an abuse of discretion, *e. g., Burns v. United States*, 287 U.S. 216, 223, 53 S.Ct. 154, 77 L.Ed. 266 (1932); *Langnes v. Green*, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931); *The Styria*, 186 U.S. 1, 9, 22 S.Ct. 731, 46 L.Ed. 1027 (1902); *Poske v. Mergl*, 169 Ohio St. 70, 157 N.E.2d 344 (1959). We also concur in Judge Robinson's separate opinion which further explicates the law on these issues.

## II

The erroneous nature *vel non* of the district court's evidentiary ruling need not further detain us, however, as whether or not this ruling was erroneous it must also be prejudicial in order to merit reversal. Errors only lead to an overturning of the verdict reached at trial when such errors "affect the substantial rights of the parties," 28 U.S.C. § 2111 (1970); *e. g., International Merger & Acquisition Consultants, Inc. v. Armac Enterprises, Inc.*, 531 F.2d 821 (7th Cir. 1976); *Anderson v. Breazeale*, 507 F.2d 929 (5th Cir. 1975), and we feel that no such rights have been affected here. That the appellees might have been shown, had the excluded testimony been admitted, to have evinced a discriminatory motive in dealing with other members of Mr. Miller's race is relevant to the question of whether or not their motive was to act in a similar fashion towards Mr. Miller. However, the facts surrounding the other alleged incident of discrimination are too indefinite, and ap-

pellees' counter-explanations for their behavior towards appellant involving no racially discriminatory motive are sufficiently compelling that we find it highly improbable that the jury would have made an affirmative finding that Miller had been discriminated against, even if the evidence proffered had been admitted, *see Schneble v. Florida*, 405 U.S. 427, 430–432, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); *Harrington v. California*, 395 U.S. 250, 251–254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Moreover only one incident was proffered by appellant and on its face that was inconclusive to establish racial animus. The excluded testimony would have shown that when two male police cadets, one white and one black, applied for an apartment in Crestwood, the white officer was told by an appellee: "If you come back alone, you will get it, but not your buddy." [5] This statement might well indicate racial prejudice, but it also might simply indicate that single person units were the only apartments available, or that there was a building policy against allowing two unmarried men to share an apartment together. Or there may have been other valid reasons to object to the second man. The possibility of such other factors would at least reduce the impact of the evidence even if they did not serve to vitiate it entirely. Moreover, even assuming that the excluded testimony proved unequivocally that a discriminatory motive was in fact at work in that case, the probative value of such evidence is intrinsically low. That the landlord had discriminated in another instance would, of course, suggest that he was biased against blacks in general, but there is no necessary connection between such a generalized sentiment and the question of whether or not appellant himself was the victim of discrimination. In light of the rapidly growing number of blacks at Crestwood during the time of Mr. Miller's tenancy there,[6] the testimo-

---

5. Tr. 278–279.

6. Between the time of appellant's application for an apartment, which he claims was denied for racial reasons, and his obtaining accommo-

ny of other blacks that they had not experienced unequal treatment, and the considerable evidence tending to show that the landlord's actions against appellant had been no more than reasonable responses to the latter's *outrageous behavior*,[7] it is hard to believe that "the average jury" would be swayed in its decision by evidence of an isolated instance of racial discrimination not even involving Mr. Miller. *See Schneble v. Florida, supra; Harrington v. California, supra; Chapman v. California, supra; Gray v. Gray,* 459 P.2d 181 (Okla.1969); *State Bank of Arthur v. Sentel,* 10 Ill.App.3d 86, 293 N.E.2d 444 (1973). Appellant's conduct was so egregious that no landlord attempting to run an orderly apartment house would have failed to take the same action as Poretsky. We agree with the appellant that the exclusion of the evidence proffered was erroneous, but we cannot agree that this exclusion altered the outcome of the case, or that Mr. Miller was denied a fair trial by the district court's action in this regard, because the evidence showed *he was heedless of apartment regulations and a highly objectionable tenant, see Bruton v. United States,* 391 U.S. 123, 135, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), quoting *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 97 L.Ed. 593 (1953).

## III

### THE DENIAL OF COLLATERAL ESTOPPEL

■ Appellant's second contention is that the district court should have given collateral estoppel effect to the judgment of the District of Columbia Court of General Sessions in which a jury, in an eviction action by appellee landlord against Miller based on an alleged *assault* by the latter on his build-

ing's receptionist, determined that Miller could not be evicted. The issue that the jury was instructed to decide in arriving at its verdict was whether "the defendant committed an assault and battery upon an employee of the landlord, and the conduct has not been waived by the landlord." [8]

During the trial of the instant suit, appellees introduced testimony of the allegedly battered receptionist concerning appellant's attack on her. The court refused to consider the earlier decision of the Court of General Sessions as conclusively establishing that no battery had occurred, and also refused to instruct the jury that another court had found Miller innocent of assault and battery.

There was no error in the court's ruling on this point. Extending collateral estoppel effect to the verdict in the eviction proceeding would have been improper because the issue involved in that litigation and the one currently before us are by no means identical. It was not important to the suit in district court whether or not Mr. Miller had in the full legal sense assaulted or battered the receptionist at Crestwood. Evidence concerning the incident was only relevant in that it tended to show that the alleged acts of discrimination were in fact motivated by appellant's own behavior. In this regard, the fact that another court had previously found that the appellant could not be evicted because he had not actually assaulted the receptionist is at best of only ambiguous significance. The difference between the issues is such that collateral estoppel was inappropriate, as it cannot be asserted that the question of whether or not Miller harassed the receptionist was litigated and decided in the earlier case, *Stebbins v. Key-*

---

dation at Crestwood, four tenants, all of whom were black, moved into this apartment complex. Tr. 373–374. Although at the time Miller moved in fewer than 5 of 217 units were occupied by blacks, Tr. 259, 267, 283, appellant concedes that "Crestwood has become increasingly racially integrated in recent years." Reply Brief at 3.

7. Appellant twice brought charges of racial discrimination against Crestwood management

before the D.C. Commission on Human Rights, and twice the Commission decided that he had not been discriminated against, *Miller v. D.C. Commission on Human Rights,* 352 A.2d 387 (1976); *Miller v. D.C. Commission on Human Rights,* 339 A.2d 715 (1975).

8. Plaintiff's Legal Memorandum, filed September 28, 1976, Exhibit B. Brief for Appellant at 30.

*stone Insurance Co.*, 156 U.S.App.D.C. 326, 331, 481 F.2d 501, 506 (1973); *Developments in the Law: Res Judicata*, 65 Harv.L.Rev. 818, 849 (1952). Moreover, it cannot be said that the judgment of the Court of General Sessions *necessarily* included a finding that Mr. Miller had not been obstreperous to his receptionist, *United Shoe Machinery Corp. v. United States*, 258 U.S. 451, 459, 42 S.Ct. 363, 66 L.Ed. 708 (1922); *Tutt v. Doby*, 148 U.S.App.D.C. 171, 173, 459 F.2d 1195, 1197 (1972). The Supreme Court has made clear that collateral estoppel must be construed narrowly to apply only to instances where there has been "an adjudication on the merits", *United States v. International Building Co.*, 345 U.S. 502, 506, 73 S.Ct. 807, 97 L.Ed. 1182 (1953), and generally only to "issues actually litigated and determined in the prior suit," *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). We feel no hesitation in determining that such estoppel was inappropriate in this case.

 As for the district court's refusal to instruct the jury that Miller had been found not guilty of assaulting the employee, we find no error in this refusal. Once a jury has been fairly and adequately instructed, the requirements of the law are satisfied, *Piechoski v. Grace Lines, Inc.*, 409 F.2d 66 (3d Cir. 1969); *Lind v. Aetna Casualty & Surety Co.*, 374 F.2d 377 (5th Cir. 1967). There is no doubt here that the instructions adequately presented the issues to be resolved by the jury. The requested "instruction" was not so much an instruction as an additional piece of evidence which appellant wanted presented to the jury with the special imprimatur of a judicial pronouncement. The trial judge may well justifiably have feared that instructing the jury that appellant had been found not guilty of assaulting the receptionist would have had a dispositive, quasi-collateral estoppel effect which it did not merit, for the same reasons that collateral estoppel itself was inappropriate. The judge did not err in refusing appellant's request.

Appellant was not foreclosed by the denial of collateral estoppel or the refusal of his requested instruction from having an ample opportunity of giving his version of the incident with the receptionist, nor from attempting to impeach her testimony. The trial court's ruling served only to ensure that the issue of appellant's abuse of a Crestwood employee would be heard in the trial of the latter's suit alleging that he had himself been abused by the management of Crestwood. The district court's ruling in this regard, far from unfairly prejudicing appellant's case, served only to ensure that the full merits of the question at issue were fairly presented to the jury.

## IV

### THE REFUSAL OF APPELLANT'S REQUESTED INSTRUCTION

Appellant's final contention is easily disposed of. He objects to the trial court's instruction concerning what the jury must find in order to return a verdict favorable to him on the charge of racial discrimination. The instruction as given stated:

The first element of liability that the plaintiff has the burden of establishing, as I said before, by a preponderance of the evidence, is that these defendants treated Mr. Miller differently than they would have treated a white person under the same or similar circumstances.[9]

Whereas the instruction requested by the appellant was designed to be somewhat more explicit concerning the point that the jury need not find that racial discrimination was the sole reason for the landlord's alleged mistreatment of the appellant in order to award the latter damages:

*Requested Instruction No. 10 Racial and Non-Racial Motivation*

In order for you to return a verdict for plaintiff, it is not necessary for you to find that defendants' actions were based solely on racial discrimination. It is sufficient if you find that plaintiff's race played some part in defendants' actions

9. Tr. 597.

788

toward him. Even if you find that plaintiff violated established rules and regulations of the Crestwood, if you also find that these rules and regulations would not have been applied to plaintiff had he been White, or would have been applied less strictly, then you must find for plaintiff. In reaching this determination, you should consider the evidence relating to defendants' racial attitudes as well as all other evidence in the case.

Authority.

*Moore v. Townsend*, 525 F.2d 482 (7th Cir. 1975); *Smith v. Sol D. Adler Realty Company*, 436 F.2d 344 (7th Cir. 1971);

*Stevens v. Dobs, Inc.*, 483 F.2d 82 (4th Cir. 1973); *Langford v. City of Texarkana, Arkansas*, 478 F.2d 262 (8th Cir. 1973);

*Steele v. Title Realty Company*, 478 F.2d 38 (10th Cir. 1973);

*Williamson v. Hampton Management Co.*, 339 F.Supp. 1146 (N.D.Ill.1972);

*McDonnell Douglas Corp. v. Green*, 411 U.S. 82, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973);

*Taylor v. Safeway Stores, Inc.*, 365 F.Supp. 468 (D.Col.1973).

 Appellant and the district judge did not in fact disagree over the legal standard to be applied; nor do appellees suggest that appellant was wrong in maintaining that as long as race was *any* factor influencing the landlord's dealing with appellant that appellant was entitled to recover. The trial court simply chose to phrase the appropriate legal standard somewhat differently, admittedly less emphatically, than appellant would have liked. As long as a district judge's instructions are legally correct, however, he is not required to give them in any particular language, even when this language has been copied directly from Supreme Court opinions, which Miller's certainly was not, *Wolff v. Comm'r of Puerto Rico*, 341 F.2d 945 (1st Cir. 1965); *Dupont v. Southern Pacific Co.*, 366 F.2d 193 (5th Cir. 1966), *cert. denied*, 386 U.S. 958, 87 S.Ct. 1027, 18 L.Ed.2d 106 (1967). Appellant

claims that the court's instruction "certainly left the impression that in order to find for the plaintiff it at the least was required to find that the racial motivation of defendants preponderated over other considerations," but even a cursory reading of these instructions demonstrates that this criticism is unfounded. The trial judge correctly informed the jury that they must find by a preponderance of the evidence that racial prejudice was at least one factor influencing appellees' actions. This is the law, not error, and appellant had no right to ask for more.

Having determined that the error the trial court did in fact make did not deny appellant a fair trial, and that the other grounds for appeal are meritless, we affirm the judgment of the district court.

*So Ordered.*

SPOTTSWOOD W. ROBINSON, III, Circuit Judge, concurring:

I am in full accord with Parts II and III of the court's opinion, and with the court's conclusion in Part I that the District Judge erroneously excluded Horan's testimony to an incident that the jury could have interpreted as an act of racial discrimination by appellees against someone other than appellant. I also agree that, in the circumstances of the case, the ruling was not sufficiently prejudicial to require reversal, and that appellant cannot prevail on any other contention he now presses. I wish to emphasize, however, that our holding today is that rejection of this testimony could not be sustained as an appropriate exercise of judicial discretion even absent the compounding effect of two other trial occurrences—the admission of evidence of nondiscrimination proffered by appellees, and the District Judge's pretrial statement that appellant would be permitted to put on evidence indicating discrimination by appellees against others. In other words, admission of the challenged testimony was required even if it had not been aided by these additional factors.

Resolution of the evidentiary issue is somewhat handicapped by the fact that, as my colleagues recognize, "[t]he trial court did not specify its reasons for exclusion."[1] Appellees contend[2] that Horan's testimony was kept out as a matter of trial-court discretion in the balancing function summoned by Federal Evidence Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.[3]

While it is possible to deduce from the record that the District Judge utilized Rule 403 in barring the testimony,[4] the record more readily supports the inference that the theory underlying exclusion was irrelevance.[5] But whatever the rationale assumed by the judge as the basis for his action, the ruling cannot pass muster.

## I

In pertinent part, the Fair Housing Act[6] declares unequivocally that

> it shall be unlawful—

> (a) To refuse to . . . rent after the making of a bona fide offer . . . or otherwise make unavailable or deny, a dwelling to any person because of race [or] color . . . ..

> (b) To discriminate against any person in the terms, conditions, or privileges of . . . rental of a dwelling . . . because of race [or] color . . . ..[7]

No one suggests that the case before us is exempt from these provisions,[8] nor can it be

---

1. Majority Opinion (Maj. Op.) 193 U.S.App. D.C. at ——, 595 F.2d at 782. In excluding Horan's testimony, the District Judge merely stated, "I am going to tell you my ruling. I am going to exclude it. The court has ruled." Trial Transcript (Tr.) 280.

2. Brief for Appellees at 18.

3. Fed.R.Evid. 403.

4. In oral argument before the District Judge urging the inadmissibility of Horan's testimony, counsel for appellees stated:

 > Your Honor, we would say under the Federal Rules it is such inflammatory evidence that, even if it is relevant and material, it should be eliminated, because, in weighing the probative weight of the evidence against the danger of the jury getting confused, we think it ought to be kept out.

 > This case is getting very far afield. We have to try to confine it to him.

 Tr. 278–279.

5. When trial counsel for appellant offered Horan as a witness, the following colloquy with the court transpired:

 > THE COURT: Now what did I rule yesterday, just to test your recollection with respect to this business about pattern and practice of discrimination? What did I rule?

 > [COUNSEL]: Your Honor, this is not a pattern.

 > THE COURT: All right. What did I rule with respect to this?

 > [COUNSEL]: That there would be no evidence admitted except evidence relating to similar incidents as those suffered by [appel-

 lant] at the same time in the Crestwood. I understood that that evidence was to be admissible.

 > We do not consider this a pattern and practice, Your Honor. This is relevant evidence, admissible under the Federal Rules of Evidence, without any regard to a pattern-and-practice theory.

 Tr. 277. After appellant's trial counsel proffered the evidence, the judge remarked:

 > Now, what has that to do with showing racial discrimination against [appellant], other than possibly this business about a pattern and practice, which we all agreed was not an issue in this case?

 Tr. 279.

 In sum, the only indication in the record that the District Judge relied on Rule 403 in excluding Horan's testimony emerges in the form of argument by defense counsel, which did not even cite Rule 403. See note 4 *supra*. In contrast, the judge's expressions pointed to concern only of the relevance of pattern-and-practice evidence of the issue of discrimination against appellant as an individual.

6. Pub.L. No. 90–284, tit. VIII, §§ 801 *et seq.*, 82 Stat. 81 (1968), 42 U.S.C. §§ 3601 *et seq.* (1976), hereinafter cited as codified.

7. 42 U.S.C. § 3604(a)–(b) (1976).

8. Since December 31, 1968, § 3604's prohibitions against discrimination in rentals have applied to all dwellings not exempted. *Id.* § 3603(a)(2). Crestwood Apartments falls within the statutory definition of "dwelling," *id.* § 3602(b), but outside the exemptions, see *id.* §§ 3603(b), 3607.

gainsaid that conduct described by the Act transgresses its terms when motivated by considerations of race or color.[9] So, in the case at bar, proof that appellees acted with racial animus in taking the complained-of actions against appellant would clearly have been sufficient, though possibly not essential,[10] to establish a violation of the Act. The question, then, is whether Horan's testimony was competent and relevant on that score.

There is no doubt whatever that the answer must be in the affirmative. Rule 404(b) provides that "[e]vidence of other . . . acts . . . may . . . be admissible [to prove] motive [or] intent." [11] This canon incorporates a longstanding and broadly operative principle,[12] and there is

**9.** See *Smith v. Sol D. Adler Realty Co.,* 436 F.2d 344, 349–350 (7th Cir. 1971) (defendant violated Act by refusing to rent apartment to plaintiff because of her race); *Bishop v. Pecsok,* 431 F.Supp. 34, 37–38 (N.D.Ohio 1976) (defendant violated Act by "rejecting the plaintiffs' application on the basis of race").

**10.** It is not necessary to consider whether a demonstration of discriminatory effect, unaccompanied by a showing of discriminatory intent, might in some circumstances establish a violation of the Fair Housing Act. See, however, *Resident Advisory Bd. v. Rizzo,* 564 F.2d 126, 140–150 (3d Cir. 1977), *cert. denied,* 435 U.S. 908, 98 S.Ct. 1457, 55 L.Ed.2d 499 (1978); *Smith v. Anchor Bldg. Corp.,* 536 F.2d 231, 233 (8th Cir. 1976); *United States v. City of Black Jack,* 508 F.2d 1179, 1184–1185 (8th Cir. 1974), *cert. denied,* 422 U.S. 1024, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975); *Kennedy Park Homes Ass'n, Inc. v. City of Lackawanna,* 436 F.2d 108, 114 (2d Cir. 1970), *cert. denied,* 401 U.S. 1010, 91 S.Ct. 1256, 28 L.Ed.2d 546 (1971); *Nevett v. Sides,* 571 F.2d 209, 237–238 n.8 (5th Cir. 1978) (concurring opinion); *cf. United States v. City of Milwaukee,* 441 F.Supp. 1377, 1380–1382 (E.D.Wis.1977).

**11.** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed.R.Evid. 404(b).

The Advisory Committee's Note to Rule 404(b) explains that it

deals with a specialized but important application of the general rule excluding circumstantial use of character evidence. Consistently with that rule, evidence of other crimes, wrongs, or acts is not admissible to prove character as a basis for suggesting the inference that conduct on a particular occasion was in conformity with it. However, the evidence may be offered for another purpose, such as proof of motive, opportunity, and so on, which does not fall within the prohibition. In this situation the rule does not require that the evidence be excluded. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the

evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403. Slough and Knightly, *Other Vices, Other Crimes,* 41 Iowa L.Rev. 325 (1956).

When the House Committee on the Judiciary examined Rule 404(b) in the form proposed to it, it made an important change in language reflecting an equally important change in emphasis:

The second sentence of Rule 404(b) as submitted to the Congress began with the words "[t]his subdivision does not exclude the evidence when offered". The Committee amended this language to read "[i]t may, however, be admissible", the words used in the 1971 Advisory Committee draft, on the ground that this formulation properly placed greater emphasis on admissibility than did the final Court version.

H.R.Rep.No.93–650, 93d Cong., 1st Sess. 7 (1973).

The report of the Senate Committee on the Judiciary reflects the same concern:

[T]he use of the discretionary word "may" with respect to the admissibility of evidence of crimes, wrongs, or acts is not intended to confer any arbitrary discretion on the trial judge. Rather, it is anticipated that with respect to permissible uses for such evidence, the trial judge may exclude it only on the basis of those considerations set forth in Rule 403, i. e. prejudice, confusion or waste of time.

S.Rep.No.93–1277, 93d Cong., 2d Sess. 24–25 (1974).

**12.** "Subdivision (b) of Rule 404 follows previous federal practice. . . ." J. Weinstein & M. Berger, Evidence ¶ 404[08] at 404–41 (1977). See, *e. g., Wood v. United States,* 41 U.S. (16 Pet.) 217, 229, 10 L.Ed. 987, 994 (1842) ("where the intent of the party is matter in issue, it has always been deemed allowable, as well in criminal as in civil cases, to introduce evidence of other acts and doings of the party, of a kindred character, in order to illustrate or establish his intent or motive in the particular act directly in judgment"). *Abrams v. United States,* 449 F.2d 662, 663 (2d Cir. 1971); *NLRB v. National Seal Corp.,* 127 F.2d 776, 778 (2d Cir. 1942) ("[w]hen intent . . . is an issue it is always permissible . . . to show that the actor has been engaged in other similar trans-

no reason why it should not apply here. As the court's opinion states, "it is clear that the proffered evidence of past acts of racial discrimination was relevant to prove the landlord's motive in his action towards appellant." [13]

This conclusion finds ample support in the caselaw, perhaps nowhere more strongly than in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green*,[14] wherein the Court delineated "the order and allocation of proof in a private, non-class action challenging employment discrimination." [15] After the plaintiff has carried the initial burden of establishing a prima facie case of racial discrimination,[16] said the Court, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason" for his conduct.[17] If that reason sufficiently meets the plaintiff's prima facie case, the plaintiff must then "be afforded a fair opportunity to show that [the defendant's] stated reason for [his actions] was in fact pretext." [18] Very importantly for the case before us, the Court specifically noted that "[o]ther evidence that may be relevant to any showing of pretext includes facts as to . . . [the defendant's] general poli-

actions"); *Stroud v. United States*, 199 F.2d 923, 925 (5th Cir. 1952); *Williams v. United States*, 199 F.2d 921, 922 (5th Cir. 1952); *United States v. Lumantes*, 139 F.Supp. 574, 575–576 (N.D.Cal.1955), aff'd, 232 F.2d 216 (9th Cir. 1956); *Bowles v. Jung*, 57 F.Supp. 701, 709 (S.D.Cal.1944) ("[i]t is a cardinal rule of law that when intent, knowledge, or design are in issue, either in a criminal or civil cause, other acts of similar character may be offered to prove them"); *United States v. Fifty-Two Cases of Distilled Spirits*, 62 F.Supp. 749, 750–751 (E.D.La.1945).

**13.** Maj. Op. at 193 U.S.App.D.C. at ——, 595 F.2d at 784.

**14.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**15.** *Id.* at 800, 93 S.Ct. at 1823, 36 L.Ed.2d at 676. Although *McDonnell Douglas* was decided under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1976), the reasoning there seems equally applicable to private nonclass actions alleging discrimination in violation of the Fair Housing Act. The language of the two Acts is very similar; under both, conduct otherwise lawful becomes unlawful if motivated by a racial consideration. Compare 42 U.S.C. § 2000e–2(a) (1976) (discharging an employee, refusing to hire an applicant for employment, or offering individuals different levels of compensation or different terms and conditions of employment unlawful if based on race) with 42 U.S.C. § 3604 (1976) (refusing to sell or rent a dwelling to an individual with a bona fide offer, refusing to negotiate for the sale or rental of a dwelling, or offering individuals different terms, privileges, or conditions of sale or rental of a dwelling unlawful if based on race).

The problem faced in *McDonnell Douglas* was whether an employment decision had been based on a legitimate ground or whether it was the product of discrimination against the plaintiff because of his race. Because the Fair Housing Act like Title VII, requires a plaintiff to show that he was denied his right to fair housing because of his status as a member of a protected class rather than for some valid reason, the problem of distinguishing racially-motivated from legitimately-motivated conduct arises just as it does under Title VII. Consequently, it would appear that the standards enumerated in *McDonnell Douglas* are applicable in nonclass suits alleging Fair Housing Act violations. See *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1201–1202 (6th Cir. 1974) (drawing analogies between use of statistics in Fair Housing Act cases and use of statistics in school segregation and employment discrimination cases); *Smith v. Anchor Bldg. Corp., supra* note 10, 536 F.2d at 234–235 (applying prima facie standards of *McDonnell Douglas* in Fair Housing Act case).

**16.** "The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applications; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." *McDonnell Douglas Corp. v. Green, supra* note 14, 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677 (footnote omitted).

**17.** *Id.*; see *Board of Trustees of Kenne State College v. Sweeney*, —— U.S. ——, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Constr. Co. v. Waters*, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978).

**18.** *McDonnell Douglas Corp. v. Green, supra* note 14, 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

cy and practice with respect to minorit[ies]." [19]

Relying on *McDonnell Douglas*, we recently held in *Kinsey v. First Regional Securities, Inc.*,[20] a discrimination suit brought by but one individual, that exclusion of "evidence of hiring practices and statistical data" [21] on grounds of irrelevance constituted reversible error even though the evidence related to different jobs and different time periods from those cited in the plaintiff's complaint.[22] Moreover, the *McDonnell Douglas-Kinsey* approach to the admissibility of other-acts evidence [23] has been endorsed by numerous other courts in nonclass employment-bias [24] and fair-housing [25] actions. So commonly has other-acts evidence been utilized in individual nonclass discrimination suits that courts frequently admit it without any felt need to elucidate a rationale for their actions.[26]

**19.** *Id.* at 804–805, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

**20.** 181 U.S.App.D.C. 207, 557 F.2d 830 (1977).

**21.** *Id.* at 216, 557 F.2d at 839.

**22.** *Id.*

**23.** Although in this case we need determine only the admissibility of a single "other act" of discrimination in a suit brought by an individual, the result would be no different if several acts were involved constituting a pattern and practice or statistical evidence of discrimination. The District Court's apparent reliance on this distinction was therefore erroneous. See note 5 *supra*.

**24.** *Smith v. Liberty Mut. Ins. Co.*, 569 F.2d 325, 329 (5th Cir. 1978) ("[t]his Court has always recognized the strong probative value of statistics in proving race discrimination cases"); *Adams v. Reed*, 567 F.2d 1283, 1287 (5th Cir. 1978), quoting *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396, 417 (1977) (" 'statistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue"); *Corley v. Jackson Police Dep't.*, 566 F.2d 994, 999–1001 (5th Cir. 1978) (under *McDonnell Douglas*, evidence of a history of racial discrimination by the defendant "is not merely collateral; it is an indispensable element of the plaintiff's burden of proof and must be confronted by the district court in finding for either party"); *Terrell v. Feldstein Co., Inc.*, 468 F.2d 910, 911 (5th Cir. 1972) ("statistical evidence of a pattern or practice of discrimination is of probative value in an individual discrimination case for the purpose of showing motive, intent, or purpose"); *King v. Yellow Freight Sys. Inc.*, 523 F.2d 879, 882 (8th Cir. 1975) (same); *Marquez v. Omaha Dist. Sales Office*, 440 F.2d 1157, 1160–1161 (8th Cir. 1971) ("[w]hile this case was not tried as a typical pattern discrimination case, the past record of [the defendant's] actual experience in hiring members of a minority race . . . may be considered in evaluating plaintiff's claim of discrimination as to him"); *Carey v. Greyhound Lines, Inc.*, 380 F.Supp. 467, 472 (E.D.La.1973) ("[t]here is no merit to [defendant's] suggestion that statistical evidence is of no probative value in an individual's Title VII case"). *Cf. Bobb v. Andrus*, 430 F.Supp. 522, 523 (D.D.C.1977) (if the case had been a class action, statistical evidence presented would have been most relevant and convincing; even though case at bar is individual suit, all evidence presented had been considered).

**25.** See notes 27–31 *infra* and accompanying text. See also *Weathers v. Peters Realty Corp.*, *supra* note 15, 499 F.2d at 1201–1202 ("[i]n cases construing [the Fair Housing Act] statistics have often been used to aid in establishing the existence of racial discrimination"). *Smith v. Anchor Bldg. Corp.*, *supra* note 10, 536 F.2d at 234–235 & nn.2 & 7 ("[e]vidence of the experience of checkers [persons posing as apartment applicants] has been uniformly admitted into evidence to show the existence of discrimination"; evidence of the experience of other black applicants is "highly probative" in individual discrimination suit; "statistics are relevant in an individual discrimination case").

**26.** *Johnson v. Jerry Pals Real Estate*, 485 F.2d 528, 529–530 (7th Cir. 1973) (referring to defendant's past practice of not selling homes to blacks in white residential areas, and relying on statement by defendant's agent to white home buyer that black home buyers were not shown all available listings); *Frausto v. Legal Aid Soc'y*, 563 F.2d 1324, 1328–1329 (9th Cir. 1977) (statistics considered in nonclass employment discrimination suit); *Wharton v. Knefel*, 415 F.Supp. 633, 636 (E.D.Mo.1976) (evidence showing that defendant offered to rent apartment to black person a year and a half before she declined to rent apartment to black plaintiff considered in reaching conclusion that plaintiff was not denied housing on the basis of race); *Harper v. Union Savs. Ass'n*, 429 F.Supp. 1254, 1261 (N.D.Ohio 1977) (evidence of actions taken with respect to other mortgagees, black and white, considered in suit under Fair Housing Act alleging racial discrimination by bank in foreclosure procedures); *Bishop v. Pecsok*, *supra* note 9, 431 F.Supp. at 36 (evidence that landlord had told another black applicant that

In several nonclass housing discrimination cases, evidence nearly identical to that offered here has been admitted as clearly relevant. In *Smith v. Anchor Bldg. Corp.,*[27] the plaintiff, suspecting that she had been denied an apartment because she was black, enlisted the aid of a local civil rights organization. The latter dispatched to the apartment complex in question a white "checker,"[28] whose "function . . . in this context was to compare rental procedures as applied to black and white persons."[29] The checker's observations were let in, the Eighth Circuit noting on appeal that such activity "has been uniformly admitted into evidence to show the existence of discrimination."[30] Evidence of a nearly contemporaneous rejection of another black applicant was also received, the Court of Appeals remarking that it was "highly probative."[31]

Similarly, in *Wharton v. Knefel,*[32] evidence showing that a defendant landlord had offered to lease an apartment to a prospective black tenant a year and a half before she turned the also-black plaintiff down was considered in arriving at the conclusion that the plaintiff was not denied housing on the basis of race.[33] And in *Bishop v. Pecsok,*[34] evidence disclosing that a landlord had informed another black applicant that he did not rent to blacks was relied upon to support the court's holding

that rejection of the black plaintiff's application was founded on race.[35]

Perhaps these examples might be multiplied, but more is hardly necessary. The probative value of other-acts evidence in nonclass discrimination suits is satisfactorily established. Exclusion of Horan's testimony to appellees' discriminatory acts against others than appellant cannot be sustained on the notion that it was irrelevant.

## II

For these reasons, evidence of this nature was entitled to a role in appellant's effort to demonstrate appellees' motive in treating him as they did. Appellees contend, however, that the decision on Horan's testimony could nevertheless have been proper as an exercise of judicial authority under Rule 403.[36] Although "the trial judge's weighing of evidence against the criteria of Rule 403 is a matter within his discretion,"[37] there are limits on the discretion conferred by Rule 403,[38] and irredeemably they were exceeded here.

To begin with, any grant of discretion contemplates that it will be exercised—one way or the other—when the situation giving it birth makes its appearance. Beyond that, discretion is abused if clearly probative evidence is excluded when there is virtually no danger of unfair prejudice, issue-confusion or other Rule 403 factors militat-

---

he did not rent to blacks, and evidence that "no blacks lived in [defendant's] apartment" on the date plaintiff was denied an apartment "and few, if any, ever lived there" relied on to support conclusion that rejection of plaintiff's application was based on race).

27. *Supra* note 10.

28. 536 F.2d at 233–234.

29. *Id.* at 234 n.2.

30. *Id.*

31. *Id.* at 234.

32. *Supra* note 26.

33. 415 F.Supp. at 636.

34. *Supra* note 9.

35. 431 F.Supp. at 36.

36. Rule 403 is quoted in text *supra* at note 3.

37. Maj. Op. 193 U.S.App.D.C. at ——, 595 F.2d at 783. Indeed, as appellate judges we would not find error in a trial judge's ruling merely because we would have reached a different result.

38. Judge Weinstein suggests that "[d]espite the large powers granted by the rule, . . . Rule 403 should be applied infrequently and cautiously by trial judges." J. Weinstein and M. Berger, *Evidence* ¶ 403[02] at 403–14 (1977). Support for this position is found in "the history of opposition to the Model Code and Uniform Rules, as well as the concern of draftsmen of the Federal Rules of Evidence." *Id.* at 403–13 to 403–14.

ing against admission.[39] Scrutinizing this case within these limits, it must first be noted that there is nothing on the record before us to indicate that the District Judge ever drew upon his Rule 403 discretion—by weighing appropriate factors [40]—in concluding that Horan's testimony was inadmissible,[41] and that the uncertainty in this regard could be removed only by a remand with instructions to explicate the reasons for concluding that exclusion was in order.[42] There is no need for that, however, for, even assuming that the judge actually endeavored to strike the balance required by Rule 403, exclusion was erroneous under the abuse-of-discretion standard.

**39.** See, e. g., *United States v. Dwyer,* 539 F.2d 924, 927–928 (2d Cir. 1976) (exclusion of expert testimony relevant to defendant's insanity defense constituted abuse of discretion granted by Rule 403); *Posttape Assocs. v. Eastman Kodak Co.,* 537 F.2d 751, 757–758 (3d Cir. 1976) (exclusion of evidence of insurance coverage constituted abuse of discretion because evidence was relevant and prejudice unlikely because both parties were commercial entities).

Application of the abuse-of-discretion standard inexorably requires that this appellate court engage to some degree in the weighing process mandated by Rule 403. Judge Weinstein suggests that "[t]he usual approach on the question of admissibility on appeal is to view both probative force and prejudice most favorably towards the proponent, that is to say, to give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." J. Weinstein and M. Berger, *Evidence* ¶ 403[03] at 403–18 (1977). This comports with the "thrust of the Federal Rules" which "favors admissibility." *Id.* And, emphasizing the strong policy in favor of full development of the evidence in federal litigation, the Supreme Court quite recently commented:

The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. . . . The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence.

*United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1064 (1974); see *United States v. King,* 73 F.R.D. 103, 105–106 (E.D.N.Y.1976).

**40.** Speaking in the context of trial-court authority to admit or exclude hearsay reputation testimony, the Supreme Court has admonished that "[w]ide discretion is accompanied by heavy responsibility on trial courts to protect the practice from any misuse." *Michelson v. United States,* 335 U.S. 469, 480–481, 69 S.Ct. 213, 221, 93 L.Ed. 168, 176 (1948). The Court went on to praise the trial court's careful consideration of appropriate factors. *Id.* at 481, 69 S.Ct. at 221, 93 L.Ed. at 176. The best evidence that a trial court has properly exercised its discretion is explication on the record of his reasons for acting. See note 41 *infra.*

**41.** See note 1 *supra.* The weighing process should be conducted explicitly on the record. As this court recently stated:

[W]hat is required of the judge is a balancing of the probative value of and need for the evidence against the prejudicial impact. Sometimes this analysis is cursory and appears only by implication . . . . To avoid the possibility [of] confusion . . . it would be preferable to confront the problem explicitly acknowledging and weighing both the prejudice and the probative worth of impeachment in the spirit of balancing stress in [Rule 403].

*United States v. Robinson,* 174 U.S.App.D.C. 224, 229, 530 F.2d 1076, 1081 (1976). See *United States v. Dwyer, supra* note 39, 539 F.2d at 928 ("[a]lthough Rule 403 has placed great discretion in the trial judge, discretion does not mean immunity from accountability;" trial judge should have put reasons for exclusion on trial record); *John McShain, Inc. v. Cessna Aircraft Co.,* 563 F.2d 632, 635 (3d Cir. 1977) ("the balance required [by Rule 403] is not a *pro forma* one. A sensitive analysis of the need for the evidence as proof on a contested factual issue, of the prejudice which may eventuate from admission, and of the public policies involved is in order before passing on such an objection. The substantiality of the consideration given to competing interests can be best guaranteed by an explicit articulation of the trial court's reasoning"); J. Weinstein and M. Berger, *Evidence* ¶ 403[02] at 403–14 to 403–15 (1977) ("when [Rule 403] is used, a clear statement of the reasons should be made for the record"); M. Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above,* 22 Syracuse L.Rev. 635, 666–667 (1971) ("[t]o play fair, a trial judge relying upon discretionary power should place on the record the circumstances and factors that were crucial to his determination . . . so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision").

**42.** See *Contemporary Mission, Inc. v. Famous Music Corp.,* 557 F.2d 918, 928 (2d Cir. 1977) ("because [the trial court] did not reach these issues, and because we believe it would be inappropriate for this Court to engage in Rule 403 balancing in the first instance, the case must be remanded to the district court for the purpose of making a Rule 403 determination").

Appellees contend,[43] that the probative value of Horan's testimony was outweighed by its prejudicial proclivity. The difficulty in that position is that the prejudice to which Rule 403 speaks is something utterly different from the capability of the evidence to debilitate the opponent's cause in an entirely legitimate manner. The prejudice that Rule 403 specifies as a factor working against the admission of relevant evidence is "unfair prejudice,"[44] and " '[u]nfair prejudice' . . . means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."[45] Though arguably, as appellees claim,[46] Horan's testimony might have engendered some chance that the jury might penalize appellees for discriminating against someone other than appellant, its exclusion could not possibly have been justified in the face of the much more powerful considerations on the other side. Horan's testimony had no special attribute of unfair prejudice that would distinguish it from the general body of other-acts evidence thought to be so relatively free of a potential for unfair application that courts routinely admit it in nonclass discrimination suits without any discussion of prejudice.[47] Remoteness of the danger to which appellees advert is further attested by the fact that they cite no case—nor have we found any—in which evidence of this kind was excluded on the basis of unfair prejudice. Doubtless that is because the evidence not only is relevant, as everyone concedes, but is the only indication—other than the defendant's say-so—of what his state of mind might have been when he acted.[48]

Rule 403 does not precondition the admissibility of other-acts evidence upon a guaranty that its use by the jury will be impeccable. It recognizes fully the value of limiting instructions, and contemplates that "[i]n reaching a decision whether to exclude on grounds of unfair prejudice, consideration [will] be given to the probable effectiveness or lack of effectiveness of a limiting instruction."[49] No reason whatever is suggested as to why in the instant case the already miniscule risk that the jury might go astray could not have been acceptably mitigated, if indeed not eradicated, by an instruction confining the jury's utilization of Horan's testimony specifically to the issues of intent and motive on which it was sought to be admitted.

Finally, appellees also suggest that Horan's testimony could properly have been excluded because it would have interjected collateral issues likely to confuse or mislead the jury and waste time.[50] Here again, no case in which other-acts evidence was rejected on this premise has been uncovered. Quite to the contrary, in *Corley v. Jackson Police Department*[51] the Fifth Circuit held flatly that such evidence properly directed does not pose the hazard of collateral disputes:

> It is apparent . . . that the district court . . . viewed all evidence relevant to pretext—the treatment of other officers similarly accused . . . and the history of racial discrimination within the Jackson police—as 'collateral questions' . . . . But under *McDonnell Douglas,* such evidence is not merely collateral; it is an indispensable element of the plaintiff's burden of proof and must be confronted by the district court in finding for either party. Such evidence does not becloud any issue in this case; rather, it directly addresses and

---

**43.** Brief for Appellees at 18.

**44.** See text *supra* at note 3.

**45.** Advisory Committee Note to Fed.R.Evid. 403.

**46.** Brief for Appellees at 18.

**47.** See notes 24–26 *supra.*

**48.** See Part III *infra.*

**49.** Advisory Committee Note to Fed.R.Evid. 403.

**50.** Brief for Appellees at 18.

**51.** *Supra* note 24.

sharply defines a key issue, as developed in *McDonnell Douglas* and its progeny.[52]

### III

As an eminent jurist once observed, under certain conditions a decision normally committed to a trial court's discretion may become the subject of a judicial rule:

> Several of the most important reasons for deferring to the trial judge's exercise of discretion—his observation of the witnesses, his superior opportunity to get 'the feel of the case,' see *Cone v. West Virginia Pulp & Paper Co.*, 330 U.S. 212, 216, 67 S.Ct. 752, 91 L.Ed. 849 (1947), and the impracticability of framing a rule of decision where many disparate factors must be weighed, see *Atchison, T. & S.F. Ry. v. Barrett*, 246 F.2d 846 (9th Cir. 1957)—are inapposite when a question arising in advance of trial can be stated in a form susceptible of a yes-or-no answer applicable to all cases. . . .[53]

And as a discerning commentator has similarly noted, a primary reason for a policy of deference is that the issues involved are of such character that they do not lend themselves to sound resolution by application of a general rule.[54] The frequency with which other acts evidence has been admitted in discrimination cases without question or apparent ill consequences suggests that a judicial rule favoring its normal admission has arisen already de facto. However that may be, at the very least a failure to follow clear precedent in an unexceptional case falls fatally short of a sound exercise of judicial discretion.

52. 566 F.2d at 1001.

53. *Noonan v. Cunard Steamship Co., Ltd.*, 375 F.2d 69, 71 (2d Cir. 1967) (Friendly, J.).

54. See Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above, supra* note 41, 22 Syracuse L.Rev. at 662–663.

55. Advisory Committee Note to Fed.R.Evid. 403.

56. In a similar case, the Second Circuit said: [W]here the reasons for a discretionary ruling are not apparent to counsel, they will probably not be apparent to an appellate court.

An important public policy is subserved by admission of evidence of other acts of discrimination or nondiscrimination on the part of a defendant whose motivation vis-a-vis the plaintiff has been drawn into question. As the populace has become more and more aware of the illegality of disparate treatment attributable to racial or some other invidious classification, discriminatory practices have become increasingly subtle. Absent something amounting well nigh to an open admission of discriminatory purpose, victims may find it virtually impossible to prove that fact unless permitted to introduce evidence that the defendant has engaged in one or more acts of discrimination against others. At the same time, a defendant falsely accused of discriminating against the plaintiff should not be made to forego an opportunity to demonstrate lack of bias—more palatably than by his unsupported disavowal alone—by evidence reflecting nondiscriminatory activity on other occasions. These are wholly legitimate concerns when the operation of Rule 403 is subject to judicial inquiry. As the Advisory Committee has expressly stated, "[t]he availability of other means of proof may also be an appropriate factor" for consideration in instances implicating Rule 403.[55] Here it should be given the prominence it is justly due.

In sum, whether Horan's testimony was excluded on a theory that it was irrelevant or that its probative value was outweighed by the likelihood of a prejudicial impact or the generation of collateral issues, the District Judge's ruling cannot stand.[56] Other

\* \* \* \* \* \*

Both sides to the instant controversy have generously offered to supply us with the basis for [the trial court's] conclusion.

\* \* \* \* \* \*

Despite careful consideration of the arguments of counsel, we are unable to ascertain what actually did or permissibly could have prompted the trial judge to act as he did. We therefore conclude that the exclusion of [the] testimony . . . constituted an abuse of discretion.

*United States v. Dwyer, supra* note 39, 539 F.2d at 928.

trial occurrences enhanced the error in this ruling, but it was amiss even without those additional considerations. That is not to say that other-acts evidence can never be barred on grounds of prejudice or collateralness. It is to say that before it is rejected the record should show that it possesses characteristics presenting much more of a special and insuperable difficulty than appears here.